171 So. 293

**BARNETT v. STATE.**

6 Div. 748.

Court of Appeals of Alabama.

Oct. 6, 1936.

Rehearing Denied Nov. 3, 1936.

S. A. Lynne, of Decatur, for appellant.

A. A. Carmichael, Atty. Gen., and Silas C. Garrett, III, Asst. Atty. Gen., for the State.

278

F. D. McArthur, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

SAMFORD, Judge.

However harrowing may be the details of this most lamentable incident, which resulted in the death of Miss Alverson, causes must be tried according to the rules of law as they exist, and are not to be construed or twisted to meet a certain state of facts. Lay v. State, 26 Ala.App. 458, 162 So. 319. The law of homicide has been the subject of the decisions of our courts from the beginning of our jurisprudence, resulting in well-defined rules known to all and not here necessary to repeat. These rules apply to the intent, the method, and manner of the homicide, and the division of the crime into four degrees.

As to the two degrees of murder and rulings applicable alone to them, it will not here be necessary to consider, for the reason that by the verdict of the jury the defendant was acquitted of them.

The defendant was convicted of manslaughter in the first degree over his insistence by request for the general charge that he could not be so convicted.

Under our statute, Code 1923, § 4460, manslaughter in the first degree is the voluntary depriving a human being of life. This statute has been the subject of many decisions of this court and of the Supreme Court, and the advent of the automobile on the roads and highways of the state has necessitated a further discussion of the law on the subject.

Manslaughter in the first degree as defined at common law and under statutes declaratory thereof consists in the unlawful killing of a human being without malice either expressed or implied. As applied to cases where persons are killed by automobiles, we have said that: "If there is evidence tending to show that the blow struck by the automobile being driven by defendant was intentional, or the automobile was being so driven as to evidence a wanton and reckless disregard of human life at the time and place and under the circumstances," this would be voluntary manslaughter. Curlette v. State, 25 Ala. App. 179, 142 So. 775, 776.

There is an entire absence of any evidence tending to prove that the defendant intentionally ran his automobile against the deceased.

That leaves us to the inquiry as to whether or not the automobile was at the time and place being driven by defendant with such wanton and reckless disregard of human life as to amount in law to an intentional killing.

The rule as laid down by our Supreme Court in civil cases is that the act done must be done with the consciousness that injury will probably result, in order to constitute wanton negligence, and such knowledge cannot be implied, from knowledge of the dangerous situation, but there must be a design to do a wrong, or a reckless indifference or disregard of the natural consequences of the act done. Merrill v. Sheffield Co., 169 Ala. 242, 53 So. 219; Brown v. St. Louis & S. F. R. Co., 171 Ala. 310, 55 So. 107. Again it is said: "Wanton injury must be predicated upon actual knowledge of another's peril, and a failure to take available preventive action, knowing that such failure will probably result in injury." Copeland v. Central of Georgia R. Co., 213 Ala. 620, 105 So. 809, 810. We

constantly have before us the familiar illustration of a workman on a high building who intentionally throws a brick onto a populous street, where pedestrians are known to be or are likely to be, as being an act so disregardful of human life as to constitute the intent to take life. But it is held in a long list of cases in other jurisdictions and collated in note 18, 29 Corpus Juris, 1156, "an unintentional killing occasioned by the reckless and negligent driving of a motor vehicle may constitute involuntary manslaughter."

■ The facts necessary to prove such recklessness in the driving of an automobile so as to supply the intent, without which there can be no manslaughter in the first degree, must be proven by the evidence beyond a reasonable doubt. Curlette v. State, 25 Ala.App. 179, 142 So. 775.

■ Assuming that the deceased was struck by an automobile driven by defendant, as we read this record, there is no such evidence as would warrant the jury in finding the defendant guilty of such wanton and reckless driving of his automobile, at the time and place of the accident, as would constitute manslaughter in the first degree, and for that reason the court erred in refusing to defendant the charge instructing them that, if they believed the evidence, the defendant could not be convicted of manslaughter in the first degree.

■ ' There are facts from which inference may be drawn to sustain a conviction for manslaughter in the second degree (Code 1923, § 4460), and therefore the affirmative charge as to that degree of homicide was properly refused.

There are other questions presented by this record which we do not pass upon, for the reason that they probably will not arise on another trial.

The judgment is reversed and the cause is remanded.

Reversed and remanded.

RICE, Judge (dissenting).

Appellant was convicted of the offense of manslaughter in the first degree, and his punishment fixed at imprisonment in the penitentiary for the term of five years. It was alleged in the indictment under which he was tried that he "killed Elizabeth Alverson by driving an automobile over, upon or against her."

It appears without dispute that Elizabeth Alverson, a young woman eighteen years of age, was struck by an automobile being propelled at a rate of speed sufficient to raise her body in the air about as high as a "man's head," and to knock it some 85 or 90 feet in the direction in which the automobile was going.

At the time Miss Alverson was struck, as above, the uncontroverted testimony is that she was standing still, in the center of First avenue in Birmingham, Ala., at a point where same is 68 feet wide; and that the point where she was struck was in the direct line from the north to the south side of said avenue (which runs east and west) as one would leave the curbing of said avenue to cross it, while traveling southward—as the testimony shows she was doing—on Sixty-First street, in said city. In other words, the testimony was ample to warrant the finding that the one driving the automobile which struck Miss Alverson—and killed her—was guilty of the offense of manslaughter in the first degree.

The testimony connecting this appellant with the crime was entirely circumstantial. In this situation, it is of course true that, "no matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof the law requires." Cannon v. State, 17 Ala. App. 82, 81 So. 860. But, as pointed out in the opinion in this Cannon Case, just cited, "this is a rule of law for the guidance of the jury in its conclusions, to be drawn from all the evidence; as to whether the evidence can be so reconciled *is a question for the jury,* and not for the court." (Italics ours.) Assuming, of course, that there was *some substantial* evidence tending to fasten the crime charged upon defendant (appellant).

We do not deem it essential to outline nor detail the evidence which tended to show the guilt of appellant. Suffice to say that, after a careful examination of the contents of the bill of exceptions, we are persuaded, and hold, that the learned trial judge was correct in his view that the same made a case for the jury. There was hence no error in refusing to give at appellant's request the general affirmative charge to find in his favor.

What we have just been saying might suffice to show that we, likewise, do not think it was error to overrule appellant's

motion to set aside the verdict of the jury —as for the insufficiency of the evidence to support same. But we might add that, while the bill of exceptions *purports* to show that it contains all the evidence offered upon the trial, yet it affirmatively appears that it *does not;* hence we would, in no event, be warranted in overturning the action of the trial court in denying appellant's (defendant's) motion, on the ground named, to set aside the verdict and grant him a new trial.

We have endeavored to perform our full duty under the terms of Code 1923, § 3258. But we find very little, further, that needs to be said.

The court gave at the request of the state —a dangerous practice—some seven written charges. But each of said charges asserts a correct, applicable, principle of law; and no error, of course, appears in this regard.

In addition to covering fully, lucidly, accurately, and correctly every principle of the applicable law in his splendidly worded oral charge, the trial judge gave at defendant's (appellant's) request some *thirteen* copiously worded written charges. Thus we find the written charges *refused* to defendant (appellant), in every instance (save, possibly, the *one* we shall later mention), if not patently erroneous, to be covered in substance by some written charge given at defendant's (appellant's) request, or by the trial court's oral charge. So no error is found in this regard. Code 1923, § 9509.

As for appellant's written, requested, and refused, charge No. 39—which may, *possibly,* not be covered by what we have already said—it is only meet that we say that it is now held not to be error to refuse such a charge. Montgomery v. State, 169 Ala. 12, 53 So. 991; Brooks v. State, 15 Ala. App. 525, 74 So. 85.

We have closely examined every ruling giving rise to an exception reserved on the taking of testimony. It seems to us not necessary to discuss same seriatim. Clearly, we believe, none of same were infected with error prejudicial to defendant (appellant).

Since the above was written, appellant's distinguished counsel has filed an elaborate brief, which we have carefully examined. But we find nothing therein that seems to call for more extended statement than we have hereinabove made.

There appears, nowhere, to have been committed error upon the proceedings which calls for a reversal of the judgment appealed from.

And the same is, accordingly, here affirmed.

All that appears hereinabove was written by me as and for the opinion of this court, before the expiration of the 1935-1936 term of our court. It was rejected by my brethren; the case held over until *this* term of court; and an opinion written by SAMFORD, J., is now promulgated.

It is needless to argue; in fact, appellant's distinguished counsel *argued* but cursorily, the point upon which the judgment is reversed. He, the learned trial judge, and I, all seem to have been in error—if my associates are correct—in thinking the disposition of the case depended upon other and, as we apparently saw it, closer questions.

If this decision stands, and, being based upon a *finding of fact* (which finding I think is incorrect), it would seem *destined* to stand (Loveman, Joseph & Loeb v. Himrod, 226 Ala. 342, 147 So. 163), it occurs to me that our Supreme Court erred in its decision in the case of Hyde v. State, 230 Ala. 243, 160 So. 237.

I therefore dissent.